UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOKILABEN SOMABHAI CHAUDHARI, *et al.*<br>         Plaintiffs<br><br>     v.<br><br>ALEJANDRO MAYORKAS and<br>DANIEL M. RENAUD<br>         Defendants | No. 24 CV 6893<br><br>Judge Jeremy C. Daniel |

**ORDER**

The defendants' motion to dismiss [16] is granted.

**STATEMENT**

The plaintiffs[1] are twelve foreign nationals seeking authorization to work in the United States. (Compl. at 1.)[2]  They filed this putative class action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, against Defendants Alejandro Mayorkas, the Secretary of the Department of Homeland Security, and Daniel M. Renaud, the Director of the Vermont Service Center (collectively, "the defendants"). (Compl. at 2.)

The U.S. Citizenship and Immigration Services ("USCIS") may grant legal status (colloquially known as "U status") to "eligible aliens who are victims of serious crime and who cooperate with law enforcement." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 362 (4th Cir. 2021); (*see* Compl. at 4); 8 U.S.C. § 1101(a)(15)(U).[3] The annual allocation for U status recipients is 10,000 individuals, but the number of pending applications currently exceeds 140,000. (Compl. at 4.) "Those who would otherwise be granted U status but for the cap" are placed on a regulatory waitlist. (*See id.*); 8 C.F.R. §

---

[1] The plaintiffs' full names are Kokilaben Somabhai Chaudhari, Narendrakumar Gordhanbhai Patel, Vishal Manilal Chaudhari, Sunita Rameshbhai Chaudhari, Bhavna Bharat Patel, Bharatkumar Bholabhai Patel, Jeet Narendrakumar Patel, Rupal Ravindrasingh Rajput, Ravindrasingh Balvantsingh Rajput, Dhruv Ravindrasingh Rajput, Nyasa Ravindrasingh Rajput, and Prakashsingh Manoharsingh Zala. (R. 1 ("Compl.") at 1.)
[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.
[3] The allegations of the complaint are presumed true in considering the present motion. *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 689 (7th Cir. 2023).

214.14(d)(2). Waitlisted individuals and their family members are eligible for employment authorization documents ("EADs") and are protected from removal. (Compl. at 4); *see* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 214.14(d)(2). EADs are also available to individuals determined by USCIS to have a *bona fide* U status petition. (Compl. at 4); U.S.C. § 1184(p)(6). The plaintiffs are foreign nationals who have filed U status and EAD applications before the USCIS. (Compl. at 4–5.) Because USCIS has not yet adjudicated the plaintiffs' applications, they seek an order compelling the defendants to adjudicate their EADs. (*Id.* at 6.)

Before the Court is the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (R. 16.) Motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6) are meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 885 (7th Cir. 2022) (Rule 12(b)(6)); *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (Rule 12(b)(1)). In either context, the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Gociman*, 41 F.4th at 885. In evaluating motions under Rule 12(b)(1) and Rule 12(b)(6), the Court applies the *Twombly-Iqbal* "plausibility" standard. *Silha,* 807 F.3d at 174. The complaint must provide enough factual information to state a claim to relief that is "plausible on its face" and raises a right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

The Court begins with the defendants' Rule 12(b)(1) arguments. *See Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. July 21, 1998) ("When a motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first."). The defendants argue the plaintiffs lack standing, that all of the plaintiffs (except for the lead plaintiff) are improperly joined, that all of the plaintiffs' (except for the lead plaintiff) claims are moot, and, in the alternative, that the Court lacks jurisdiction over all of the plaintiffs' claims. (R. 17 at 6–13.) The Court's procedural analysis begins and ends with standing.

"Standing is a threshold jurisdictional requirement that 'derives from the Constitution's limit on federal courts' authority to resolve 'cases' and 'controversies.'" *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 1). For facial challenges to standing as presented here, the Court accepts all material factual allegations as true and construes all reasonable inferences in the plaintiffs' favor. *Id.* at 279. To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

The defendants argue that the plaintiffs' claims fail for lack of redressability. (R. 17 at 6.) Redressability means that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). In the defendants' view, the plaintiffs' requested relief, *i.e.*, an order compelling the defendants to adjudicate their EADs, would not remedy their alleged injury, *i.e.*, their inability "to lawfully provide for themselves and their family." (R. 17 at 6–7 (quoting Compl. at 5).) This is because, even if the defendants adjudicate their applications, the plaintiffs are not eligible for EADs until and unless USCIS either determines that their U visa applications are *bona fide* or they are placed on the waitlist. (*Id.* at 7); *see generally Gonzalez*, 985 F.3d at 364 ("Until the application is approved and the petitioner is placed on the waiting list, [USCIS] has not committed itself to providing deferred action or work authorization."). The defendants thus argue that because the complaint alleges that USCIS has not yet placed the plaintiffs on the waitlist or determined that their U visa applications are *bona fide*, it does not support an inference that the plaintiffs are currently eligible for EADs. (R. 17 at 7.) Accordingly, they argue that the complaint fails to plausibly allege that a judicial order compelling adjudication would redress the plaintiffs' claimed injury resulting from their lack of EADs. (*Id.*)

In their response brief, the plaintiffs agree that their alleged injury is an "inability to work due to lack of EAD," which causes economic harm, personal and family mental and emotional hardship, and a denial of the procedural protections set out for noncitizens who provide valuable assistance in prosecuting serious crimes. (R. 20 at 10–14.) In their view, "the act of adjudication itself provides a form of redress by moving the process forward and potentially leading to eligibility for work authorization." (*Id.* at 14.) But this argument fails to meaningfully explain how adjudication of their applications would be *likely* to result in their ability to work. Relatedly, it also does not meaningfully grapple with the defendants' position that an order compelling adjudication would result in a denial of EADs because the plaintiffs will not be eligible until their applications are determined to be *bona fide* or until they are placed on the waitlist. While allegations that adjudication potentially may lead to EADs means that it is *conceivable* that the plaintiffs' harm will be redressed, such is insufficient. Absent allegations sufficient to support an inference that USCIS is likely to grant the plaintiffs EADs upon an order compelling adjudication, the plaintiffs have failed to establish redressability. Further, although "[n]o one doubts the importance of the statutory and regulatory benefits" the plaintiffs seek, *Gonzalez*, 985 F.3d at 377, nor their alleged hardships that have been caused by the delay in adjudication, the plaintiffs' allegation of "a collective grievance rooted in a consistent pattern of agency inaction" falls short of plausibly alleging a likelihood that an order compelling the defendants to adjudicate their EADs would result in their ability to work. (R. 20 at 14.)

The plaintiffs' reliance upon *Norton v. Southern Utah Wilderness Alliance* is unpersuasive. 542 U.S. 55, 64 (2004). They argue that *Norton* establishes that "[t]he

3

APA permits courts to compel agencies to act when their inaction is unreasonable, regardless of the substantive decision." (R. 20 at 13.) Although this is a correct statement of *Norton*'s holding, it is immaterial as to standing. The issue in *Norton* was "what limits the APA places upon judicial review of agency inaction," not redressability. 542 U.S. at 61. The court merely "rule[d] out several kinds of challenges" cognizable under the APA because "the only agency action that can be compelled under the APA is action legally *required*." *Id.* at 64. (emphasis in original). Critically, nothing in *Norton* supports the plaintiffs' assertion that an injury is redressable because "court intervention would eliminate the plaintiffs' injuries . . . by ensuring USCIS processes their applications." (R. 20 at 13.) The guidepost is a *likelihood* that harm will be remedied by granting the plaintiffs' sought relief; the plaintiffs have failed to plausibly allege that their economic harm, mental hardship caused by the inability to work, and lack of access to procedural protections would *likely* be redressed by ordering adjudication.

Because the plaintiffs lack standing, the Court does not reach the defendants' other procedural arguments. Yet, for the sake of completeness, the Court briefly notes that, even if the plaintiffs had standing, their claims would still fail under Rule 12(b)(6). Mandamus relief will only be granted if the plaintiffs can demonstrate (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) that no other adequate remedy is available. *Calderon-Ramirez*, 877 F.3d at 275. Mandamus is an extraordinary remedy, "issued only in extraordinary cases." *United States v. Vinyard*, 539 F.3d 589, 591 (7th Cir. 2008) (citation omitted).

Although the plaintiffs argue that "a clear right to adjudication" exists, their cited authorities do not support their assertions. (R. 20 at 16.) First, the plaintiffs cite to 8 U.S.C. § 1184(p)(6) for the proposition that they "have a clear right to adjudication for both the waiting list, a U visa, and work authorization after ninety days" but the statutory language does not say this. (*Id.*) That provision merely restricts U status applicants from receiving nonimmigrant status for more than four years except in exceptional circumstances. 8 U.S.C. § 1184(p)(6). It also provides that USCIS "may grant work authorization to any alien who has a pending, *bona fide* application for nonimmigrant status"; importantly, it does not require a *bona fide* determination to be made within a certain time. *Id.*

Second, the plaintiffs cite to *Iddir v. Immigration and Naturalization Service*, for the proposition that the defendants have "a duty to adjudicate . . . in a reasonable period of time." (R. 20 at 16 (citing 301 F.3d 492 at 500).) But *Iddir*'s holding pertained to "the relevant statutes and regulations" at issue, *i.e.*, provisions conferring INS with "the power to administer the [Diversity Visa Lottery Program] and the duty to adjudicate the applications of the participants" not the U visa regulations. 301 F.3d at 500. The plaintiffs do not point the Court to any U visa regulation imposing a similar duty.

4

The plaintiffs' effort to distinguish this case from *Khan v. Bitter*, No. 22 C 6617, 2023 WL 6311561, at *3 (N.D. Ill. Sept. 28, 2023) and *Gonzalez*, 985 F.3d at 377 thus fails. (R. 20 at 16.) As in *Khan* and *Gonzalez*, the Court "lack[s] the power to review [the plaintiffs'] work-authorization claims here because the agency is not required to adjudicate [the plaintiffs'] requests." *Gonzalez*, 985 F.3d at 361; *see also Khan*, 2023 WL 6311561, at *3 (ruling that 8 U.S.C. § 1202(b) "does not create" duty to adjudicate). *Gonzalez*, which also involved plaintiffs seeking U status, explained that "[t]he discretion afforded to the agency over how to address work-authorization requests means that consideration of every work-authorization request is not 'required' under *Norton*." 985 F.3d at 368. "As the agency is not required to adjudicate pre-waiting-list work authorizations, no agency action exists to compel." *Id.* at 369.

For the foregoing reasons, the defendants' motion to dismiss is granted.

Date: December 16, 2024

JEREMY C. DANIEL
United States District Judge